# UNITED STATES DISTRICT COURT
for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL FUNDS ON DEPOSIT IN BANK OF AMERICA ACCOUNT NUMBER 291042711991, HELD IN THE NAME OF JODI KADRICH, AND/OR ANY ASSOCIATED GL/SUSPENSE ACCOUNT

Case Number: 26-925M(NJ)

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

TO: **RUBEN ADORNO, a Special Agent with the United States Secret Service, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

All funds on deposit in Bank of America account number 291042711991, held in the name of Jodi Kadrich, and/or any associated GL/Suspense account

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before May 11, 2026
*(not to exceed 14 days)*

❑ in the daytime – 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)* ❑ for _____ days. *(not to exceed 30)*
❑ until, the facts justifying, the later specific date of __________

Date and time issued April 27, 2026; 1:42 p.m.

*Judge's signature*

City and state: Milwaukee, Wisconsin

THE HONORABLE NANCY JOSEPH
United States Magistrate Judge
*Name & Title of Judicial Officer*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL FUNDS ON DEPOSIT IN BANK OF AMERICA ACCOUNT NUMBER 291042711991, HELD IN THE NAME OF JODI KADRICH, AND/OR ANY ASSOCIATED GL/SUSPENSE ACCOUNT

Case Number: 26-925M(NJ)

## APPLICATION FOR A WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Ruben Adorno, being duly sworn depose and say:

I am a Special Agent with the United States Secret Service and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, all funds on deposit in Bank of America account number 291042711991, held in the name of Jodi Kadrich, and/or any associated GL/Suspense account, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) in conjunction with 28 U.S.C. § 2461(c), as property that (1) constitutes or is derived from proceeds traceable to specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343; and (2) was involved in, or is traceable to funds involved in, money laundering offenses in violation of 18 U.S.C. § 1956, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

❑ Delayed notice of ____ days (give exact ending date if more than 30 days:_________ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Affiant
Ruben Adorno, USSS

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

4/27/2026 @ 1:42 p.m.
Date and time issued

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Ruben Adorno, being duly sworn, declare and state as follows:

## INTRODUCTION

1. I am a Special Agent ("SA") with the United States Department of Homeland Security, United States Secret Service ("USSS") in the Western District of Texas, and I have been so employed since December 2023. I am currently assigned to USSS San Antonio, which is tasked with investigating federal crimes involving counterfeiting of U.S. currency, credit card fraud, and wire and bank fraud. I have received both formal and informal training in financial crimes.

2. As a USSS SA, I have received extensive training at the Federal Law Enforcement Training Center and the James J. Rowley Training Center. This training covered all aspects of financial investigations including money laundering and asset forfeiture, and I have participated in numerous investigations of violations of criminal law including matters involving fraud and white-collar crime. I have written and executed numerous state seizure warrants, recovering thousands of dollars of funds for financial crimes victims.

3. I am familiar with the facts and circumstances of this investigation through my own participation and through discussions with other law enforcement officers involved with this investigation. This affidavit is intended to show merely that there is sufficient probable case for the requested warrant and does not purport to set forth all my knowledge of our investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in

substance and in part only, and all dates and times are on or about those indicated and amounts are approximate.

## PURPOSE OF THE AFFIDAVIT

4. This affidavit is made in support of an application for a warrant to seize the following funds held in the following account at Bank of America NA ("Bank of America"):

a. All funds (the "SUBJECT FUNDS") on deposit in Bank of America account 291042711991 ("SUBJECT ACCOUNT") held in the name of Jodi Kadrich ("KADRICH"), and/or any associated GL/Suspense account.[1]

5. For the reasons set forth below, I submit that the SUBJECT FUNDS are:

a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

b. Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. § 1956, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

---

[1] A GL/Suspense account is a holding account the bank puts the funds if an account is closed.

c. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

6. Affiant submits that there exists probable cause to believe that $1,800,000 in proceeds of a fraud scheme – which involved material misrepresentations and the use of electronic wires in connection with a business email compromise scheme – have been wired or deposited into the SUBJECT ACCOUNT, the account from which up to that amount of funds are sought to be seized.

### A. The Fraudulent Business Email Compromise Scheme

7. On January 15, 2026, I received information from a Bank of America investigator that funds from a business email compromise scam were sent from the victim, K.G.'s bank account, at Wells Fargo to KADRICH's account at Bank of America, the SUBJECT ACCOUNT. KADRICH is the sole signatory on the SUBJECT ACCOUNT.

8. On January 20, 2026, I contacted K.G., who is the owner of Graffius Food Services, located at 23736 Birtcher Drive, Lake Forest, California, within Orange County, in the Central District of California. Graffius Food Services leases land for Jack in the Box restaurants throughout the country, and at all relevant times, had pending negotiations to purchase land in Indiana for a new restaurant. Based on my conversation with K.G., and with other law enforcement officers, I learned the following:

a. Beginning on or about November 28, 2025, K.G. began receiving email communications that appeared to originate from trusted and legitimate sources, including her attorney and business-related contacts.

b. On December 23, 2025, K.G. received an email from an individual purporting to be her attorney instructing her to wire money related to her pending real estate transaction (the "December 23, 2025 email"). Specifically, the individual provided wiring instructions to the SUBJECT ACCOUNT, which the individual represented to be an escrow account. After exchanging emails for several days, and relying on the apparent authenticity of these emails, on January 5, 2026, K.G. went into a Wells Fargo Bank located at 30160 Town Center Drive, Laguna Niguel, CA, and sent a wire transfer in the amount of $1,650,000.00 to the SUBJECT ACCOUNT.

c. On January 7, 2026, K.G. received a call from a Bank of America investigator confirming whether her wire to the SUBJECT ACCOUNT was legitimate. K.G. informed the investigator the wire was intended for an escrow account, at which point the investigator became concerned because the SUBJECT ACCOUNT was not an escrow account.

d. Following her call with the Bank of America investigator, on January 7, 2026, K.G. visited a Wells Fargo branch location and requested a hold on her account.

9. On January 8, 2026, Orange County Sheriff's Department Investigator Jeremy Johnson visited K.G. to conduct an in-person interview and review of K.G.'s email account. Investigator Johnson concluded that K.G.'s email account had been compromised due to a lack of security features. Based on his training and experience,

Investigator Johnson concluded that the suspect(s) either gained unauthorized access to legitimate email accounts or created fraudulent email accounts designed to closely mimic legitimate accounts, and used those accounts to communicate directly with K.G. A review of K.G.'s email environment revealed multiple indicators of unauthorized access, including:

a. login activity from unusual or foreign geographic locations;

b. password changes not initiated by K.G.;

c. the creation of hidden inbox rules and filters designed to divert or conceal emails; and

d. the blocking of legitimate email addresses belonging to real attorneys, vendors, and associates.

10. Specifically, the December 23, 2025 email was sent from an email address substantially similar to K.G.'s attorney's email address, and went undetected by K.G.

**B. The SUBJECT ACCOUNT and the Fraudulently-Induced Transactions**

11. KADRICH opened the SUBJECT ACCOUNT in November 2025 at a Bank of America branch in Carpentersville, Illinois. The SUBJECT ACCOUNT is listed in the name of Jodi KADRICH at S78W29250 Frog Alley Road, Mukwonago, Wisconsin 53149.

12. As a direct result of the fraudulent email communications detailed above, K.G. initiated the following financial transactions:

a. a wire transfer of $50,000.00 to J Ventures LLC, deposited into the SUBJECT ACCOUNT on or about December 24, 2025;

b. a wire transfer of $100,000 to J Ventures LLC, deposited into the SUBJECT ACCOUNT on or about December 27, 2025;

c. a wire transfer of $1,650,000 to J Ventures LLC, deposited into the SUBJECT ACCOUNT on or about January 5, 2026.

### C. Summary of Money Movement and Laundering Activity in the SUBJECT ACCOUNT

13. The total amount sent to the SUBJECT ACCOUNT was $1,800,000.00. After K.G.'s payment were deposited into the SUBJECT ACCOUNT, the funds were transferred elsewhere, to include KADRICH's personal bank account at Bank of America and an account in the name of Janine Byrne. After receipt of the fraud proceeds, the funds were rapidly moved in a manner consistent with money-laundering, as follows:

a. On December 24, 20025—the day after K.G. sent $50,000.00 by wire transfer from Wells Fargo account number 9941771470 to the SUBJECT ACCOUNT—the SUBJECT ACCOUNT reflected 5 ATM cash withdrawals, totaling $1,000. Continuing on that same day, $48,000 was transferred from the SUBJECT ACCOUNT to personal bank account number 139107717413 in the name of Jodi KADRICH.

b. On December 28, 2025—or two days after K.G. sent $100,000 by wire transfer from Wells Fargo account number 9941771470 to the SUBJECT ACCOUNT—the SUBJECT ACCOUNT reflect a $200 ATM cash withdrawal.

c. On December 29, 2025, $95,000 was transferred from the SUBJECT ACCOUNT to KADRICH's personal account.

d. On December 30, 2025, $5,200 was transferred from the SUBJECT ACCOUNT to KADRICH's personal account. Continuing on that same day, the SUBJECT ACCOUNT made a wire transfer to Coinbase cryptocurrency exchange account number 322670350006 in the amount of $90,000.

e. On December 31, 2025, the SUBJECT ACCOUNT reflected 3 ATM cash withdrawals totaling $500. Continuing on that same day, the SUBJECT ACCOUNT made a wire transfer to Coinbase cryptocurrency account number 322670350006 in the amount of $18,000.00.

f. On January 5, 2026—the day that K.G. sent $1,650,000 by wire transfer from Wells Fargo account number 9941771470 to the SUBJECT ACCOUNT—the SUBJECT ACCOUNT reflected 2 ATM cash withdrawals, totaling $300.

g. On January 6, 2026, $300,000 was transferred from the SUBJECT ACCOUNT to KADRICHS' personal bank account. Continuing on that same day, the SUBJECT ACCOUNT made two wire transfers to Bank of America account number 237055124869 titled to Janine Byrne DBA J&M Artistry in the amount of $300 and $300,000.

h. On January 7, 2026, Bank of America account number 237055124869 titled to Janine Byrne DBA J&M Artistry made a cash withdrawal in the amount $500 by ATM. Continuing on that same day, Janine Byrne DBA J&M Artistry account number 237055124869 made a wire transfer to kraken cryptocurrency exchange account number 400020001774177713 in the amount of $230,000.00.

i. On January 8, 2026, Janine Byrne DBA J&M Artistry account number 237055124869 made a wire transfer to kraken cryptocurrency exchange account number 400020001774177713 in the amount of $69,500.00.

14. As of April 20, 2026, the SUBJECT ACCOUNT has a current balance of $1,049,467.50, all of which constitute proceeds of the above-detailed fraud scheme, or the SUBJECT FUNDS.

15. A review of the transaction activity occurring in the SUBJECT ACCOUNT reflected no legitimate business activity. The only incoming deposits into the SUBJECT ACCOUNT were attributed to credits by K.G.

16. Based on my training and experience and familiarity with this investigation, I believe that the SUBJECT ACCOUNT was used to collect proceeds of a business email compromise scheme and was used to conceal the nature and source of the proceeds.

**D. Interview of KADRICH**

17. On January 22, 2026, Investigator Johnson interviewed KADRICH by telephone. On January 28, 2026, I conducted an interview of KADRICH by telephone. Below is a summary of the information KADRICH provided to law enforcement.

18. KADRICH confirmed that she lived on Frog Alley Road in Mukwonago, Wisconsin.

19. When asked how she received large sums of funds into the SUBJECT ACCOUNT, KADRICH stated that the funds were from her boyfriend's business dealings. KADRICH further stated she met her boyfriend, famous musician Steve Miller,

online via TikTok in the fall of 2025. After talking to "Miller" approximately two to three months, KADRICH began an online romantic relationship with the person who purported to be Steve Miller.

20. According to KADRICH, "Miller" told her that he wanted to go into business with her, and that he instructed her to form a business entity named "J Ventures LLC," and to open bank accounts in that name. "Miller" instructed KADRICH how to file the LLC with the Wisconsin Secretary of State, and so she did. KADRICH stated that "Miller" would not provide her with a clear explanation of what kind of business she was operating with him. According to KADRICH, "Miller" made romantic representations to her.

21. When asked to explain the $1,650,000.00 wire to the SUBJECT ACCOUNT, Kadrich stated it was a wire from Miller's business dealings, of which she was unaware. KADRICH then stated that Miller asked her to transfer these funds into other bank accounts, including her personal Bank of America account and to an account in the name of J&M Artistry LLC, although she did not who this entity was. KADRICH explained that "Miller" instructed her to take small amounts from these transactions to pay for bills and groceries. When asked if she knew K.G., KADRICH stated she did not. KADRICH also stated Miller instructed her to create accounts with numerous banking institutions, including Wells Fargo, U.S. Bank, and Citibank.

22. Based on my training and experience, in addition to fraudulently inducing K.G. to wire $1,650,000.00 to the SUBJECT ACCOUNT, the suspect(s) also found KADRICH online and initiated a relationship for the purpose of using her as a money

laundering tool. KADRICH unwittingly became a money mule for the suspect(s) and initiated rapid movements of funds across multiple accounts and institutions, including converting the funds into cryptocurrency, with the intent to conceal the source, ownership, and control of the stolen funds. KADRICH acted in this manner based on the promise from the suspect(s) of maintaining a romantic online relationship.

## CONCLUSION

23. I submit that there exists probable cause to believe that a total of $1,800,000 was deposited into the SUBJECT ACCOUNT. An unknown subject caused K.G. to transfer this money via electronic wire transfers, under false pretense with the intent to deprive her permanently of her assets. These funds represent proceeds of a business email compromise fraud scheme and are subject to seizure and forfeiture under both the civil and criminal asset forfeiture statutes.

24. Based on the facts set forth in this affidavit, there is probable cause to believe the SUBJECT FUNDS in the SUBJECT ACCOUNT are:

a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

b. Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. § 1956, and therefore are subject

to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

c. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

25. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture.